UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA WODTKE,

             Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

             Defendant.

_____/

Civil Action No. 20-13076

Robert H. Cleland
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 18)

Plaintiff Amanda Wodtke ("Wodtke") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 15, 18), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### I.   RECOMMENDATION

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Wodtke is not disabled under the Act is supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **GRANTED**, Wodtke's Motion for Summary Judgment **(ECF No. 15)** be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Wodtke was 28 years old at the time of her alleged onset date of September 18, 2017, and at 5'4" tall weighed approximately 180 pounds at the time of her application on November 21, 2017. (PageID.68, 279-90).[1] She completed a college degree and her most significant work experience thereafter was being a retail store manager for Claire's from January 2012 to November 2016. (PageID.281-82). Although she testified that she had health "problems" during that employment, she stopped working at Claire's because she "went on maternity leave." (PageID.99). After Claire's, Wodtke worked as a gymnastics coach for a few months. (PageID.282). When she filed her claim for benefits, she alleged disability as a result of: "cardiovascular accident 9/2017;" "brain tumor removed 10/2017;" "right side" weakness; short-term memory loss; headaches; "heart disease;" "aortic stenosis;" celiac disease; and "trouble sleeping." (PageID.280).

After Wodtke's applications for SSI and DIB were denied at the initial level on July 24, 2018 (PageID.162-66, 181-85), she timely requested an administrative hearing, which was held on November 27, 2019, before ALJ Virginia Herring. (PageID.87-119). Wodtke, who was represented by attorney Samantha Ball, testified at the hearing, as did vocational expert ("VE") Pauline Pegram. (*Id.*). On January 22, 2020, the ALJ issued a written decision finding that Wodtke is not disabled under the Act. (PageID.68-81). On September 14, 2020, the Appeals Council denied Wodtke's request for review.

---

[1] Citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 12 – 12-14.

(PageID.54-56). Wodtke timely filed for judicial review of the final decision on November 18, 2020. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Wodtke's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the

> impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Wodtke is not disabled under the Act. At Step One, the ALJ found that Wodtke has not engaged in substantial gainful activity since September 18, 2017 (the alleged onset date). (PageID.70). At Step Two, the ALJ found that she has the severe impairments of "[s]tatus post lacunar occipital stroke;" "[p]ain disorder, status post craniotomy for resection of a pleomorphic xanthoastrocytoma in the left occipital lobe;" "[c]ongenital bicuspid aortic valve and aortic stenosis;" fibromyalgia; "[o]ccipital neuralgia and migraines;" depression; anxiety; "[s]omatic symptom disorder;" and "[b]orderline intellectual functioning." (PageID.70-71). At Step Three, the ALJ found that Wodtke's impairments, whether considered alone or in combination, do not meet or medically equal

4

a listed impairment. (PageID.72-74).

The ALJ then assessed Wodtke's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: can occasionally balance, stoop, kneel, crouch, crawl, and climb stairs/ramps; can never climb ladders, ropes, or scaffolds; must avoid environments with extreme temperatures, excessive humidity, noise level above moderate, excessive vibrating tools, poor ventilation, pulmonary irritants exceeding a light industrial setting, dangerous machinery, unprotected heights, and direct sunlight; is limited to simple and routine tasks; with no more than occasional changes in work setting or routine; and is limited to work that is self-paced, meaning not production rate as on an assembly line or conveyor belt. (PageID.74).

At Step Four, the ALJ found that Wodtke is not capable of performing any of her past relevant work. (PageID.79). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Wodtke is capable of performing the jobs of inspector (43,000 jobs nationally) and document preparer (46,000 jobs). (PageID.80). As a result, the ALJ concluded that Wodtke was not disabled under the Act from September 18, 2017, through the date of the decision. (*Id.*).

    **C.**    **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a

5

determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence

submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

    **D.**    **Analysis**

In her summary judgment motion, Wodtke makes two arguments, both related to her alleged "cervical spine condition." First, Wodtke argues that the ALJ erred at Step Two by not finding her alleged "cervical spine condition" to be a "medically determinable, severe impairment." (ECF No. 15, PageID.1259). Second, Wodtke alleges that as a result of that error, and the ALJ's alleged failure to properly consider that impairment's limitations on her ability to work, the ALJ "failed to create an accurate [RFC] and therefore erroneously found work at Step Five." (*Id.*, PageID.1259-60).[2] Both arguments lack merit.

    1. *The ALJ Did Not Err at Step Two*

---

[2] Later in her motion, Wodtke broke her arguments in a more pieces, asserting that the ALJ "erred at multiple steps in the five-step sequential evaluation process for determining whether Plaintiff is disabled. She failed to analyze whether the cervical spine condition is a medical[] impairment; failed to find whether it is 'severe' or 'non-severe'; failed to discuss whether it meets or equals a Listing at Step Three; failed to gather VE testimony about limitations related to it and how they could impact the RFC assessment; and failed to account for it within her RFC assessment." (ECF No. 15, PageID.1266). While Wodtke expanded on most of these arguments later in her brief, she said nothing more about meeting a Listing at Step Three. That argument is therefore waived. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). The argument fails at any rate because Wodtke presented no evidence from which one could find her alleged "cervical spine condition" satisfied the elements of any Listing.

At Step Two, the ALJ must consider whether a claimant's medically determinable impairment is a "severe [] impairment (*i.e.*, a condition that significantly limits his physical or mental ability to do basic work activities) that meets the duration requirement in § 404.1509 (longer or expected to be longer than a continuous period of at least 12 months), or a combination of impairments that is severe and meets the duration requirement." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii) and (c)). "Step two has been described as a *de minimis* hurdle; that is, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (quotations omitted); *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007). However, "an ALJ's failure to find an impairment severe is not reversible error if the ALJ found another impairment severe, and thus continued with the five-step evaluation process" while considering all of the claimant's impairments. *Lee v. Comm'r of Soc. Sec.*, No. 19-10337, 2020 WL 1139710, at *5 (E.D. Mich. Mar. 9, 2020) (citing *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007)); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (holding that it was "legally irrelevant" that some of claimant's impairments were not deemed to be severe at Step Two where other impairments were deemed severe and the ALJ considered all of the claimants' impairments in the remaining steps of the sequential analysis).

As noted above, Wodtke first argues that the ALJ erred in not finding her alleged cervical spine impairment to be "severe" at Step Two. She actually goes further, though, and argues that the ALJ did not even recognize or consider her cervical spine condition at

8

Step Two. Specifically, Wodtke argues:

> ALJ Herring did not analyze [her] cervical spine condition at Step Two, which means she did not determine whether it is a medically determinable [impairment]. In fact, anyone reading the ALJ's Unfavorable Decision would not have the slightest clue that Plaintiff suffers from a cervical spine impairment because the ALJ never mentions it at any point.

(*Id.*, PageID.1261).

A review of the ALJ's decision belies Wodtke's assertions. In the section of the ALJ's decision discussing Wodtke's severe impairments, the ALJ wrote, "[d]uring an April 2019 physical examination, [Wodtke] displayed ***full active range of motion of her cervical*** and lumbar ***spine*** and was grossly intact at the shoulder, wrists, thoracic spine, hips and knees." (PageID.71) (citing PageID.876) (emphasis added). In that same section, the ALJ also noted, "a March 2019 electromyography of [Wodtke's] bilateral upper extremities was normal and showed no electrodiagnostic evidence of median mononeuroapathies at the wrists ***or to support a C6, C7, or C8 radiculopathy***." (*Id.*) (emphasis added) (citing PageID.921 ("Nerve conduction studies of bilateral upper extremities are normal. . . . Normal examination. There is no electrodiagnostic evidence of median mononeuropathies at the wrist. There is also no electrodiagnostic evidence to support a C6, C7, or C8 radiculopathy.")). Clearly, despite the fact that in her benefits application Wodtke did not list a cervical spine impairment as one of the conditions that rendered her disabled (PageID.280),[3] the ALJ was aware of that impairment and

---

[3] At the conclusion of the hearing before the ALJ, Wodtke's then-attorney (Samantha Ball) stated that "the primary issue here [] is [Wodtke's] ability to sustain employment due to absenteeism." (PageID.118). And, when Wodtke requested that the Appeals Council review the ALJ's decision, she did not identify this as an issue. (PageID.337-38).

referenced objective medical evidence that supports a finding that it was not "severe."

Moreover, as the Commissioner notes, other record evidence is consistent with the ALJ's decision. Treatment notes from September 2016 through May 2017 showed that Wodtke was negative for neck pain, had normal range of motion in her neck, and normal extremities. (PageID.585, 592-93, 599, 620). On June 7, 2017, Wodtke gave a similar report regarding her neck, and stated that she was returning to work but stopped because she was "having a hard time accomplishing both work and personal goals." (PageID.625, 628).

In early September 2017, Wodtke reported "cervical muscle strain," and had pain with palpation and tight and tender posterior cervical muscles, but denied any muscle weakness. (PageID.668, 671). However, by September 14, 2017, Wodtke's neck had normal range of motion. (PageID.677). Her musculoskeletal exam revealed normal range of motion and no tenderness. (*Id.*). She had normal range of motion on October 24, 2017. (PageID.690). Her extremities were "normal" on December 4, 2017, and she reported no neck issues on December 4, 2017. (PageID.702, 710).

At a follow-up appointment on January 12, 2018, Wodtke displayed some left upper extremity weakness, but she "denie[d] any numbness or tingling into the bilateral upper extremities," and indicated that her "muscle strain is normally alleviated with her muscle relaxants and anti-inflammatories . ..." (PageID.715). Her extremities were normal with "no motor or neuro deficit with bilateral range of motion testing." (PageID.718). A week later, her musculoskeletal exam was "negative" both in general and specifically as to "neck pain and neck stiffness." (PageID.725). Wodtke's neck

10

displayed normal range of motion, there was "no muscular tenderness present," and she was negative for numbness (*Id.*).

On March 6, 2018, Wodtke displayed 5/5 strength. (PageID.736). The record from this date makes a reference to a January 28, 2018 cervical spine MRI, which showed only mild multilevel degenerative changes with no signal abnormality in the spinal cord. (PageID.737). Whereas Wodtke cites this record for the proposition that she "was noted to suffer from cervical myelopathy with neck and back pain, plus numbness and tingling in the hands and legs" (ECF No. 15, PageID.1263), the Court agrees with the Commissioner that this particular record actually reflects the doctor's documentation of Wodtke's own subjective complaints and a possible diagnosis, and the broader record does not contain any diagnosis of, or treatment for "cervical myelopathy." (ECF No. 18, PageID.1294).

Indeed, the record shows that Wodtke started a short course of physical therapy for cervical pain on March 7, 2018, and stopped three months later after having met her objectives. (PageID.803-839). Specifically, records from June 8, 2018 indicate that Wodtke attained the following improvements: was "less tight since starting the functional dry needling treatments. Patient feels about 40% improved overall and wishes to discharge PT to continue with a home exercise program;" "able to pick up child from floor with proper posture: no longer difficult now;" "difficulty checking bling spots while driving – minimal difficulty now;" "dressing – no difficulty now;" "Patient reported pain ranging from 2/10 and 4-5/10 in the neck." (PageID.803). She was found to have "met" her "longer term goals" as to "[l]ifting, strength, ROM and pain levels improved to permit

11

child care;" "driving, Cervical ROM and pain levels permit pt to turn head allowing safe driving;" "cervical pain levels improved to permit grooming hair." (PageID.804). The records indicate, "[n]o further therapeutic intervention is indicated at this time," and that Wodtke was being discharged because her goals were met and she declined further treatment. (*Id.*).

Although Wodtke underwent another cervical spine MRI in November 2018, with Dr. Paul Hilliard finding "a shallow disc osteophyte complex, which slightly effaces the ventral thecal sac" at C6-C7, he also found that there "is no spinal canal stenosis or neural foraminal narrowing" at that location. (PageID.866). Dr. Hilliard's full impression was "[m]ild multilevel degenerative changes," and "[n]o signal abnormality or pathologic enhancement evident in the spinal cord." (*Id.*). Most significantly, Dr. Hilliard did not assess a cervical spine impairment, and found that his physical exam of Wodtke "does not reveal limited cervical or lumbar spine movement," and that Wodtke displayed normal upper extremity range of motion. (PageID.869-70). Thus, Dr. Hilliard did not impose any functional limitations on Wodtke related to her cervical spine, and merely suggested that she engage in physical therapy for her "fibromyalgia pain." (*Id.*).

Finally, while Wodtke saw doctors in December 2018 and April 2019 for complaints about cervical spine tenderness, neither doctor assessed a cervical spine impairment. (PageID.876, 951). At the December exam, Wodtke was kept on the same medications and told to exercise and return in three months. (PageID.951). The motor exam from April 2019 did "not reveal limited cervical or lumbar spine movement," and showed her to have normal upper extremity range of motion. (PageID.876). And, a June

11, 2019 diagnostic examination of Wodtke's cervical spine revealed "unremarkable" findings, with no significant degenerative changes. (PageID.1005-06).

Moreover, any Step Two error was harmless as the ALJ found at least one severe impairment, and then continued the sequential analysis, considering *all* of Wodtke's credible limitations, including ones related to her alleged cervical spine impairment. *Lee*, 2020 WL 1139710, at *5; *Fisk*, 253 F. App'x at 584; *Anthony*, 266 F. App'x at 457. The ALJ made clear that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence," and then specifically noted that Wodtke "described experiencing multiple symptoms. She stated that she gets pain like an electric shock in her neck, and has difficulty looking side to side, holding her neck down, and using the computer due to her neck problems." (PageID.74-75). Contrary to Wodtke's assertion in her reply brief that in fashioning an RFC, the ALJ failed to consider that she "has significant difficulty using her upper extremities" and "experiences constant, severe symptoms in both upper extremities including joint pain and tenderness in her elbow and wrists, pain which radiates from her neck into her shoulders, plus cramping, generalized pain, tingling, and numbness in her arms, hands, and fingers," the ALJ's decision reflects that she did consider those issues. (ECF No. 19, PageID.1306; *id.*, PageID.1305 (asserting that the Commissioner did not consider her limitations in "reaching, handling, fingering, and feeling with the bilateral upper extremities, as well as excessive absenteeism")). Specifically, the ALJ noted that following an October 2017 surgery, Wodtke "denied any numbness or weakness in her arms and legs," and that "[d]uring a physical examination, she exhibited full strength

13

throughout her bilateral upper and lower extremities." (PageID.75-76). The ALJ also noted that Wodtke is "fairly active and independent with her daily living activities," including "do[ing] her own laundry, cooking, driving, shopping, and [that] she takes care of her two children.[4] (PageID.79).

Finally, the record contains no medical opinion assessing any functional limitations beyond those determined by the ALJ. And, the ALJ properly relied on the July 2018 opinion from Dr. Valerie Andrews, the State agency medical consultant who reviewed the diagnostic evidence related to Wodtke's cervical spine, and determined that she retained the ability to perform a range of light work, without the additional limitations Wodtke contends the ALJ should have imposed. (PageID.78-79, 131-33, 145-47).[5]

For all of these reasons, substantial evidence supports the ALJ's Step Two decision that did not find Wodtke's cervical spine condition to be a severe impairment.

> 2. *Wodtke's Arguments about the ALJ's RFC Determination and Step Five Analysis Lack Merit*

Wodtke's next argument – that the ALJ failed to develop a proper RFC and therefore erroneously found work at Step Five – is largely derivative of her other arguments discussed above. Specifically, she argues that while the ALJ's limitation to

---

[4] In a third-party function report prepared by Wodtke's significant other, he wrote that she "gets our daughter ready for school and spends most of the day taking care of our infant son." (PageID.294). He wrote that despite the fact that Wodtke "often gets tingly/numbness in [her] hands," she nevertheless could lift their "20 lb. infant son" and does household chores, including laundry, dishes, basic household cleaning, and picking up toys. (PageID.295, 298). *See also supra* at 11.

[5] Indeed, the ALJ adopted an RFC somewhat more restrictive than that recommended by Dr. Andrews; whereas Dr. Andrews limited Wodtke to *frequent* postural activities, the ALJ limited Wodtke to *occasional* postural activities in light of, among other impairments, the "electric shock type-pain and reduced range of motion in her neck . . ." (*Id.*).

"sedentary work does keep [her] from lifting over 10 pounds on a regular basis, it does not take into account the positioning of the neck or the use of the arms and hands." (ECF No. 15, PageID.1268). Wodtke then points to the same evidence discussed above – the "positive objective physical examinations and an MRI of the cervical spine, plus treatment of physical therapy and medications," and asserts, "[s]urely limitations with flexion, extension and rotation of the neck would be experienced by someone with such an impairment, yet the ALJ did not include any such limitations within her RFC assessment" or "questions to the VE regarding neck limitations." (*Id.*, PageID.1269). For the reasons discussed below, these arguments lack merit, and the ALJ's RFC and Step Five determinations are supported by substantial evidence.

First, the Court reiterates that the overarching premise of Wodtke's argument – that the ALJ failed to "analyze" or even "mention" her cervical spine condition – is simply wrong. The ALJ discussed that condition both expressly, and implicitly by referring to the above-referenced evidence. The ALJ also expressly noted that in making her RFC determination, she "consider[ed] all of the claimant's impairments, including impairments that are not severe." (PageID.70).

Second, while the record contains some positive objective findings, as discussed above, the overwhelming majority of the salient records reflect normal functioning in Wodtke's neck and back, as well as in her musculoskeletal systems. Moreover, the mere diagnosis of an impairment does not say anything about its *functional limitations*, which the claimant has the burden of proving. *See, e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis ... of course, says nothing about the severity of the

condition."); *Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 589 (6th Cir. 2019) ("Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). Here, however, Wodtke points to no functional limitations imposed by any of her physicians related to her cervical spine that the ALJ should have included in the RFC or questioning of the VE. She cannot meet her burden by asking the Court to assume that her conditions would "surely" cause her to suffer any particular limitations. *Preslar*, 14 F.3d at 1110.

Nor was the ALJ required to include in the limitations in the RFC based on Wodtke's subjective complaints and testimony that the ALJ found not to be supported. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Here, the ALJ wrote that Wodtke's "statements about the intensity, persistence, and limiting effects of [] [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." (PageID.75). Specifically, the ALJ noted that Wodtke "is fairly active and independent with her daily living activities. She does her own laundry, cooking, driving, shopping, and she takes care of her two children," and that she walks her dog and does physical therapy. (PageID.77, 79). This is supported by the record. (PageID.294-298, 1047; *see also supra* at 14 n.4). Nor did any physician indicate that her conditions would cause her to be absent with any particular frequency.

The ALJ expressly indicated that she had reviewed Dr. Andrews' July 2018 state agency medical consultant opinion which limited Wodtke "to light exertion with frequent postural activities, but no climbing of ladders, ropes, or scaffolds; and a need to avoid concentrated exposure to extreme cold and heat, noise, vibration, pulmonary irritants, and

all exposure to hazards," and then explained she was adopting a slightly more restrictive RFC. *See supra* at 14 n.5. The ALJ asked the VE about a hypothetical person with that exact set of limitations, and the VE testified that such a person could perform various jobs that exist in the national economy. (PageID.115-16).

Finally, in her reply brief, Wodtke criticizes the Commissioner for allegedly painting with a broad brush and not addressing every limitation she claims the ALJ should have included in the RFC and questions to the VE. Specifically, Wodtke argues that the Commissioner's motion "only focuses on one portion of [her] RFC argument which is that the ALJ's residual functional capacity fails to account for limitation in movement of the neck such as flexion, rotation, and extension. By not discussing the other limitations that [she] sets forth within her Motion for Summary Judgment, [Wodtke] contends that [the Commissioner] agrees that the ALJ's RFC, does, indeed, lack those limitations, and, thus, is not supported by substantial evidence. Those other limitations which [the Commissioner] did not contest are reaching, handling, fingering, and feeling with the bilateral upper extremities, as well as excessive absenteeism and time off task due to chronic pain, migraines and symptoms associated with mental impairments." (ECF No. 19, PageID.1305). This argument fails at every level.

First, the portion of the Commissioner's motion that Wodtke criticizes merely addressed *Wodtke's* contention that, "[s]urely limitations with *flexion*, *extension* and *rotation of the neck* would be experienced by someone with such a[] [cervical spine] impairment." (ECF No. 15, PageID.1269) (emphasis added). Second, Wodtke's assertion that the Commissioner "did not contest" her position that the ALJ erred in not

17

including RFC limitations for activities such as reaching, handling, fingering, excessive absenteeism, etc., unfairly characterizes the Commissioner's brief. The Commissioner argued that even if the ALJ had found Wodtke's cervical spine "condition" to be severe, "the RFC would not change because the record does not contain credible evidence of **any** functional limitations caused by those impairments." (ECF No. 18, PageID.1298) (emphasis added). The Commissioner also explained, "[h]ere [] the ALJ included all the relevant and supportable functional limitations in the hypothetical to the vocational expert." (*Id.*, PageID.1300). The Commissioner noted that "[i]nstead of proving the functional impact of her alleged impairment," Wodtke had merely "point[ed] to medical records with notations regarding her general physical functioning, such as having 'tight' and 'tender' cervical muscles and muscle strain or spasms," which "does not meet her burden" of establishing the additional or different limitations the ALJ should have imposed. (*Id.*, PageID.1301) (citing *Chapa-Gonzalez v. Comm'r of Soc. Sec.*, No. 20-10655, 2021 WL 5108762, at *5 (E.D. Mich. Apr. 20, 2021), *rep. & rec. adopted sub nom. Chapa-Gonzalez v. Saul*, 2021 WL 4551117 (E.D. Mich. Oct. 5, 2021)). And, contrary to Wodtke's argument, the Commissioner specifically explained that "the ALJ was not required to include [Wodtke's] subjective complaints in her hypothetical questions to the vocational expert, or include [her] preferred limitations (such as ***being off task or absent from work***), where such limitations were not supported by the record." (*Id.*, PageID.1302) (emphasis added).

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

Accordingly, that decision should be affirmed.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 18)** be **GRANTED**, Wodtke's Motion for Summary Judgment **(ECF No. 15)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: July 8, 2022　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## **REVIEW**

Either party to this action may object to and seek review of this Report and Recommendation ("R&R"), but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed .R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this R&R. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. L.R. 72.1(d)(2).

***Note these additional requirements at the direction of Judge Cleland:***

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this R&R to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 8, 2022.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager